IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KEY ENERGY SERVICES, INC., | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:08-cv-346-CE |
| | § | |
| C.C. FORBES, LLC, and FORBES ENERGY | § | |
| SERVICES, INC., | § | |
|    *Defendants*. | § | |
| | § | |

**ORDER**

Before the court are Plaintiffs Key Energy Services, Inc.'s and Key Energy Services, LLC's (collectively "Key") Motions *in Limine* (Dkt. No. 251), Defendants C.C. Forbes, LLC's and Forbes Services, Ltd.'s (collectively "Forbes") Motions *in Limine* (Dkt. No. 255), Forbes's Motion *in Limine* to Preclude Key from Arguing Infringement Under the Doctrine of Equivalents (Dkt. No. 256), and the parties' Agreed Motions *in Limine* (Dkt. No. 252). This order memorializes the rulings made on the motions *in limine* at the pretrial hearing on May 26, 2011, as well as rules on those motions carried by the court at the pretrial hearing.

Also pending before the court are Forbes's *Daubert* Motion to Exclude the Expert Testimony of Alan Ratliff on Damages and Foreign Patent Law (Dkt. No. 219) and Forbes's *Daubert* Motion to Exclude the Expert Testimony of Arthur Zatarain, P.E. (Dkt. No. 221). Having considered the briefing of the parties and the applicable law, the court is of the opinion that Forbes's motion to exclude the testimony of Mr. Ratliff should be GRANTED-IN-PART and DENIED-IN-PART. The Court also holds that Forbes's motion to exclude the testimony of Mr. Zatarain should be DENIED.

1

I. **Plaintiffs' Motions *in Limine* (Dkt. No. 252)**

   **1. Any reference to the requests for reexamination filed by Forbes.**

   GRANTED.

   **2. The testimony of Keith Womer should be limited to his opinions expressed in the body of this expert report and deposition.**

       **a. Any testimony by Mr. Womer concerning the alleged obviousness of combinations that are not specified in the body of Mr. Womer's report.**

   GRANTED.

       **b. Any testimony by Mr. Womer concerning an anticipatory references [sic] beyond those cited in his report.**

   GRANTED.

       **c. Any tesmimonty by Mr. Womer concerning the requirements and/or defenses provided under 35 U.S.C. § 112.**

   GRANTED.

       **d. Any testimony by Mr. Womer concerning the requirements and/or defenses provided under 35 U.S.C. § 116.**

   GRANTED.

       **e. Any testimony by Mr. Womer regarding materiality of references.**

   GRANTED for purposes of the jury trial.

       **f. Any testimony from Mr. Womer involving an element by element analysis.**

   GRANTED.

       **g. Any testimony from Mr. Womer concerning the intent of the examiner or the actions the examiner would have taken under a separate set of circumstances.**

   GRANTED.

       **h. Any other testimony by Mr. Womer concerning inequitable conduct.**

   GRANTED.

> i. **Any testimony by Mr. Womer concerning fault or judgment related ot materials made available to the examiner.**

GRANTED.

> j. **Any testimony from Mr. Womer regarding the use of Scott Boone's 1993 or 1996 systems or the use of the Petron system on a workover rig without corroborating evidence.**

DENIED.

3. **Any testimony from any of [sic] expert witnesses or fact witnesses relating to legal conclusions or determinations, including testimony relating ot prosecution history estoppel.**

GRANTED-IN-PART and DENIED-IN-PART.  GRANTED as to legal conclusions. DENIED as to the factual story concerning what the prosecution history was.

4. **Any testimony regarding the prior use of the invention through Scott Boone's 1993 and 1996 systems.**

DENIED.

5. **Any testimony regarding the prior use of a Petron monitoring system on a well service rig.**

DENIED.

6. **Any testimony or argument that the second claimed transmission must be separate from the first transmission.**

DENIED.   Defendants may argue that the first and second transmissions must be distinct components, but may not argue that they must be separate and independent.   If Defendants make any argument that contradicts the court's claim construction, then Plaintiffs will be able to discuss the court's claim construction ruling on cross examination.

7. **Any testimony or argument regarding Key Rig 880.**

DENIED.

8. **Any evidence or testimony concerning combinations or prior art references that have not been disclosed by Forbes's experts.**

GRANTED.

9. **Any lay testimony regarding the disclosures, scope or content of any alleged prior art references; any supposed relation of alleged prior art to the claims at issue; whether any asserted prior art references read on asserted claims; and any motivation to combine references.**

GRANTED-IN-PART and DENIED-IN-PART. The court GRANTS Plaintiff's motion with respect to any lay testimony regarding whether any asserted prior art references read on asserted claims. This motion is otherwise DENIED.

10. **Any use of an excerpt from any edition of the Composite Catalog without first using the entire Composite Catalog.**

DENIED.

11. **Any references or testimony regarding the relative size of Key in comparison to Forbes.**

GRANTED-IN-PART and DENIED-IN-PART. GRANTED to the extent that Defendants may not make any comparisons as to the net worth of Plaintiffs and Defendants. DENIED in all other respects.

12. **Any evidence, references, or testimony concerning whether the asserted claims of the patents-in-suit are directed to patentable subject matter under 35 U.S.C. § 101.**

GRANTED.

13. **Any references to the AMI Prophet SR system being a non-infringing alternative.**

DENIED.

14. **Any references to settlement agreements between Key and any of the Defendants.**

GRANTED.

15. **Any references to any settlement negotiations which have taken place, or the lack thereof, between the parties.**

GRANTED.

16. **Any discussion that Key pled earlier claims or allegations that have been amended or withdrawn.**

GRANTED.

17. **Any testimony of any individuals not previously disclosed in accordance with Rule 26.**

GRANTED-IN-PART and DENIED-IN-PART pursuant to the agreement of the parties as stated on the record.

18. **Any comment or argument on the decision of Key to not call any witness or on the substance of the testimony if the witness had been called to testify in this matter.**

DENIED.

19. **Any comment or argument concerning unavailable witnesses.**

DENIED.

20. **Any comment or argument concerning witnesses not in Key's control.**

GRANTED.

21. **Any statements by Forbes's counsel or Forbes which tends to inform the jury or the jury panel or any of the jurors of the effect of their answers to specific questions asked of them in the Court's Charge.**

DENIED.

22. **Lay testimony regarding the meaning of the claims in the '490 and '920 patents.**

GRANTED.

23. **Any reference to any restatement filed by key Energy with the Securities and Exchange Commission or the absence of filings by Key Energy in light of the restatement.**

GRANTED.

5

**24. Any demands or requests by Forbes before the jury for matters, materials, or documents found or contained in Plaintiffs' files, which would include statements, pleadings, records, and any other documents, or requests for further documents or additional examinations, physical demonstrations, or other requests during the course of the trial and in the presence of the jury.**

GRANTED.

## II.   Defendants' Motions *in Limine* (Dkt. No. 255)

**1. Key may not present evidence of a conception date earlier than the date of filing for each of the patents-in-suit.**

   **a.  U.S. Patent No. 6,079,490 ("the "490 Patent")**

GRANTED-IN-PART and DENIED-IN-PART.  Key may not argue for a conception date earlier than the date of the filing of the patent, but Key may show the activities of the inventors before the filing of the patent.

   **b.  U.S. Patent No. 7,006,920 ("the '920 Patent")**

GRANTED-IN-PART and DENIED-IN-PART.  Key may not argue for a conception date earlier than the date of the filing of the patent, but Key may show the activities of the inventors before the filing of the patent.

**2. Key may not elicit testimony or argue that defendants did not obtain a non-infringement opinion or otherwise suggest that failure to obtain a non-infringement opinion is evidence of guilt.**

GRANTED-IN-PART and DENIED-IN-PART.  Key may provide evidence that Forbes failed to obtain a noninfringement opinion but may not argue that an adverse inference should be drawn for Forbes's decision not to obtain a noninfringement opinion or that Forbes had a duty to obtain a non-infringement opinion.

6

   3. **Key may not offer any testimony, evidence, question, interrogation, or argument bearing on any information or documents withheld as privileged or calculated to draw a privilege objection at trial.**

      a. **Key should be precluded from referring to any question or issues that deposition witnesses refrained from discussion due to the assertion of the attorney-client or work product privileges or inquiring into such matters at trail with live witnesses.**

   GRANTED.

      b. **Key should be precluded from arguing or eliciting testimony at trial suggesting that there is a duty to investigate patents of others.**

   GRANTED as worded.  However, Key may present evidence that it is good business

practice to be aware of and investigate the patents of competitors.

   4. **Key may not elicit testimony or provide argument that is contrary to the court's claim constructions, that ostensibly "interprets" the court's claim constructions, or that refers to statements in the court's opinion apart from the actual claim constructions themselves.**

   GRANTED.

   5. **Key may not refer to the summary judgment motions, including the proponent or subject matter of any such motions.**

   GRANTED.

   6. **Key many not offer any testimony, evidence, or argument regarding a witness' previous communication with counsel.**

   DENIED.

   7. **Key may not elicit any testimony, evidence, or argument concerning compensation (total or hourly) of an expert witness.**

   DENIED.

   8. **No party will play or read to the jury objections or attorney colloquy from depositions.**

   GRANTED.

9. **Key may not offer any testimony, evidence, or argument regarding any discovery disputes between or among any of the parties.**

GRANTED.

10. **Key may not offer the "Confidential" designation tags placed on any production document as evidence.**

GRANTED as agreed except as to the Petron documents with "Confidential" and "Highly Confidential" watermarks.

11. **Key is precluded from challenging the authenticity of any document created by a party or third party, and produced by that party or third party.**

DENIED.

12. **Key may not offer any testimony, evidence, or argument concerning infringement allegations not set forth in Key's PIC's under Local Rule 3-1.**

GRANTED.

13. **Key may not offer any testimony, evidence, or argument concerning secondary considerations of non-obviousness absent a prior showing of an adequate nexus.**

DENIED.

14. **No demonstrative and other exhibits no already admitted or jointly approved by the parties can be used at trial.**

GRANTED.

15. **No evidence, testimony, or argument regarding the "presumption of validity" that attaches to the patents-in-suit.**

DENIED.

16. **No evidence, testimony, or argument regarding Forbes Energy Services, Ltd. being chartered in Bermuda or being an "off-shore company."**

GRANTED-IN-PART based on the agreement of the parties as stated on the record—i.e. both sides may reference the fact that Key and Forbes are Texas-based companies but may not mention the state or country of incorporation or charter of any of the parties.

17. **No evidence, testimony, or argument regarding Mexican patent law or the alleged infringement or enforceability of Key's Mexican patents.**

GRANTED with respect to Plaintiffs' case in chief. However, Plaintiffs will be allowed to offer evidence of their Mexican patent in rebuttal if Defendants open the door.

18. **No evidence, testimony, or argument that Key's Mexican patents preclude evidence of non-infringing alternatives.**

GRANTED with respect to Plaintiffs' case in chief. However, Plaintiffs will be allowed to offer evidence of their Mexican patent in rebuttal if Defendants open the door.

19. **No evidence, testimony, or argument regarding past allegations of past settlements of unrelated litigation between Key and C.c. Forbes, Charlie Forbes, or John Crisp.**

GRANTED. Key may offer evidence of the fact that John Crisp worked at Key during the time of development of the KeyView product and the patents-in-suit, but Key may not offer evidence, testimony, or argument as to any previous litigation or settlement between the parties.

20. **Key may not offer any testimony, evidence, or argument that Forbes' Bids on the PEMEX tenders were "offers for sale" because the bids were for services and not to sell or lease a patented invention.**

GRANTED-IN-PART and DENIED-IN-PART. Key is precluded from arguing that this conduct violated 35 U.S.C. § 271(a), but is not precluded from offering the facts regarding Forbes's conduct and the events leading up to this lawsuit.

21. **Key may not offer any testimony, evidence, or argument that Forbes' Bids on the PEMEX tenders were "offers for sale" because the bids were tendered and to be performed exclusively in Mexico.**

GRANTED-IN-PART and DENIED-IN-PART. Key is precluded from arguing that this conduct violated 35 U.S.C. § 271(a), but is not precluded from offering the facts regarding Forbes's conduct and the events leading up to this lawsuit.

22. **Key may not offer any testimony, evidence, or argument that PEMEX's inspection was related to Forbes' bid on tender 27.**

GRANTED-IN-PART and DENIED-IN-PART. Key is precluded from arguing that this conduct violated 35 U.S.C. § 271(a), but is not precluded from offering the facts regarding Forbes's conduct and the events leading up to this lawsuit.

23. **Key may not offer any testimony, evidence, or argument that the demonstration for PEMEX was an infringing use because no Forbes rigs were involved.**

GRANTED-IN-PART and DENIED-IN-PART. Key is precluded from arguing that this conduct violated 35 U.S.C. § 271(a), but is not precluded from offering the facts regarding Forbes's conduct and the events leading up to this lawsuit.

24. **Key may not offer any testimony, evidence, or argument that the demonstration for PEMEX in Alice, Texas was an infringing "use" because the Petron equipment was never fully installed on the Forbes rig at issue.**

GRANTED-IN-PART and DENIED-IN-PART. Key is precluded from arguing that this conduct violated 35 U.S.C. § 271(a), but is not precluded from offering the facts regarding Forbes's conduct and the events leading up to this lawsuit.

25. **Key must be precluded from making any negative reference to the fact that one or more of Forbes' witnesses is from Mexico or Speaks Spanish.**

GRANTED.

26. **Key may not offer any testimony, evidence, or argument that the operations of Forbes in Mexico are a "use" of an infringing system.**

GRANTED.

27. **No evidence, testimony, or argument by Key that Forbes infringed under 35 U.S.C. § 271(f)(1)**

   a. **Forbes cannot have infringed under 35 U.S.C. § 271(f)(1) because it shipped only a single component.**

DENIED.

      **b. Forbes cannot have infringed under 35 U.S.C. § 271(f)(1) because it did not induce any combination of components by a third party.**

DENIED.

**III.**   **Defendants' Motion *in Limine* to Preclude Key from Arguing Infringement Under the Doctrine of Equivalents (Dkt. No. 256)**

This motion is DENIED.

**IV.**   **The Parties' Agreed Motions *in Limine* (Dkt. No. 252)**

The court GRANTS all of the motions *in limine* contained in the parties' Agreed Motions in Limine as AGREED.

**V.**   **Forbes's *Daubert* Motion to Exclude the Expert Testimony of Alan Ratliff on Damages and Foreign Patent Law (Dkt. No. 219)**

In its motion, Forbes moves to exclude the testimony of Key's damages expert, Alan Ratliff. Forbes argues that Mr. Ratliff's calculation of Key's lost profits is fatally flawed because it includes any and all revenues Key could have made by providing the patented product to PEMEX, including construction revenues from the contract. In addition, Forbes argues that Mr. Ratliff's lost profits analysis erroneously includes all Forbes revenue generated under the PEMEX contract and various extensions of the contract. Forbes also moves to strike Mr. Ratliff's reasonable royalty calculation because, according to Forbes: (1) the opinion contains products, features, items, and services other than those directly covered by the patents-in-suit; (2) Ratliff failed to take into account the unenforceability of the patents; and (3) Ratliff failed to factor out infringement in his analysis and reconstruction of the nature of the market. Having carefully considered the briefing, the evidence, and the applicable law, the court finds that the issues raised by Forbes do not require that Mr. Ratliff's opinions be struck under Federal Rule of Evidence 702. Instead, these issues are more appropriately handled by "[v]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Therefore, Forbes's motion to strike the opinion of Mr. Ratliff is DENIED on these grounds.

However, Mr. Ratliff references the Mexican counterpart to the '920 patent in his report and uses the existence of this Mexican patent to bolster his assertion that there are no available non-infringing substitutes to the '490 and '920 patents. Forbes moves to strike any reference by Mr. Ratliff to Key's Mexican patent or Mexican patent law because Mr. Ratliff is not a Mexican law expert and does not know whether the Mexican patent covers Key's commercial embodiment or the accused products. The court agrees. Accordingly, the Court GRANTS Forbes's motion to strike the opinion of Mr. Ratliff on this ground and STRIKES any reference to Key's Mexican patent or Mexican law in Mr. Ratliff's report. Mr. Ratliff is precluded from referencing Key's Mexican patent in Key's case-in-chief. However, should Forbes open the door on this issue by, for example, arguing that Forbes could have avoided infringement of the '490 and '920 patents by simply combining a non-US rig with a non-US monitoring system to create a non-infringing alternative, Key and Mr. Ratliff will be allowed to use the existence of Key's Mexican patent in rebuttal.

## VI. Forbes's *Daubert* Motion to Exclude the Expert Testimony of Arthur Zatarain, P.E. (Dkt. No. 221)

In its second *Daubert* motion, Forbes moves to exclude the testimony of Key's infringement expert, Arthur Zatarain. Forbes argues that Mr. Zatarain incorrectly applies the doctrine of equivalents in comparing a well service rig used by Forbes to various claims in the '490 and '920 patents. In addition, Forbes argues that Mr. Zatarain's infringement opinions regarding a Forbes rig equipped with Petron Industries, Inc. ("Petron") monitoring equipment are based on a

hypothetical configuration that is not supported by the facts in the case. Having carefully considered the briefing, the evidence, and the applicable law, the court finds that the issues raised by Forbes are more appropriately handled by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. Accordingly, Forbes's *Daubert* Motion to Exclude the Expert Testimony of Arthur Zatarain, P.E. (Dkt. No. 221) is DENIED.

## VII.     Claim Construction Clarification

In response to Forbes's motion *in limine* number 4, Key argued that there were certain unresolved claim construction issues. The court now addresses those issues and clarifies its claim construction for the three terms at issue.

The court's claim construction order dated July 7, 2010 (Dkt. No. 100) construed "second transmission" to mean "a second compact enclosed unit of gears or the like for the purpose of transference of force between machines or mechanisms, often with changes of torque and speed, that is separate and independent from a first such assembly." In reaching this construction, the court specifically rejected Forbes's argument that the second transmission must be "separate and distinct" from the first transmission. To the extent that there is any confusion over the court's construction of the term "second transmission," the court clarifies that the second transmission does not need to be separate and distinct from the first transmission. Key, however, argues that Forbes's infringement expert contends that the second transmission must be separate from the first and that this conflicts with the court's claim construction. As the court noted in its order denying Key's motion *in limine* number 6, Defendants may argue that the first and second transmissions must be distinct components, but may not argue that they must be separate and independent.

The parties also appear to disagree on the meaning of the court's construction of the phrase "means for electronically recording the measured variable." The court ruled that the function performed by the phrase is data entry and that the corresponding structure is "a data acquisition monitor, keyboard, and touchscreen." The court recognizes that the use of "and" in the claim construction is somewhat confusing. However, the court's intention was to identify the monitor, keyboard, and touchscreen as alternative structures. Accordingly, the court clarifies its claim construction and defines the corresponding structure to the term "means for electronically recording the measured variable" as "a data acquisition monitor, keyboard, or touchscreen."

Key also claims that Forbes has taken the position that the court's construction of the corresponding structure of the term "means for electronically recording non-numerical activity data" as requiring the presence of both a keyboard and a touchscreen. The court defined the function of this term to be "entering the non-numerical activity data" and the corresponding structure to be "a keyboard and a touchscreen." Again, the court intended to identify the keyboard and touchscreen as alternative structures. The court, therefore, clarifies its claim construction of the phrase a "means for electronically recording non-numerical activity data." The court defines the function of this term as "entering the non-numerical activity data" and the corresponding structure as "a keyboard or a touchscreen."

Finally, the parties agree that the function of the term "means for transferring the electronically recorded measured variable and activity data" is "transferring measured variable and activity data" but disagree as to the meaning of the court's definition of the corresponding structure. The court's claim construction defined the corresponding structure as "(1) a modem in conjunction with a cellular phone, (2) a satellite hookup, (3) a wireless communication device, and

(4) a data storage medium." Key argues that these are all alternative structures, but Forbes argues that each of the four is required as part of the corresponding structure. As with the previous two terms, the court's intention was to identify each of the four structures as alternative structures. The court, therefore, clarifies its claim construction and defines the corresponding structure to the term "means for electronically recording the measured variable" as "(1) a modem in conjunction with a cellular phone, (2) a satellite hookup, (3) a wireless communication device, or (4) a data storage medium."

    IT IS SO ORDERED.

    SIGNED this 3rd day of June, 2011.

                                         CHARLES EVERINGHAM IV
                                         UNITED STATES MAGISTRATE JUDGE